## INDEMNITY MARINE ASSUR. CO., Limited, v. CADIENTE.

### No. 12574.

United States Court of Appeals
Ninth Circuit.

April 24, 1951.

Thomas M. Waddoups, Robert E. Brown, Honolulu, T. H. (Robertson, Castle & Anthony, Honolulu, T. H., of counsel), for appellant.

Hyman M. Greenstein, Honolulu, T. H., for appellee.

Before DENMAN, Chief Judge, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

Suit in admiralty by appellee seeking recovery on a policy of marine insurance for an alleged constructive total loss of the insured vessel Miss Philippine. The vessel ran aground at Kaupo, Island of Maui, Hawaii, on June 6, 1949. On the following day, Cadiente, the husband of appellee, who was her agent and business manager, went to the beach where the vessel was stranded and he and the master of the vesel made what inspection they could from the shore. Hagood, the master of a tugboat, The Maizie C, who was soliciting employment to salvage the vesel, inspected the vessel from a small chartered plane and made a tentative arrangement with Cadiente to get the vessel into the sea and tow her to Honolulu for repairs. The following day, however, Cadiente advised Hagood not to undertake salvage operations. On June 9 the agent of the appellant company wrote from Honolulu to appellee at her address at Ewa,

Oahu, advising of the stranding, and stating: "We accordingly hereby make demand upon you to proceed with the salvaging of this vessel in accordance with conditions of the above policy." Cadiente, either on June 10 or June 13, notified the appellant that it was useless for him to undertake to salvage and rebuild the boat and that appellee had abandoned her.

The appellant never expressly accepted the attempted abandonment. At a meeting in the office of the attorney for the appellant at Honolulu on June 13, which was attended by Cadiente, he was told that appellant still looked to appellee to salvage the vessel and that in fairness to her she should seek counsel of her own.

The insurance policy contained the usual sue-and-labor clause concluding: " * * * nor shall the acts of the Assured or Insurers, in recovering, saving, and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of an abandonment."

On June 11, the appellant entered into a formal agreement or "charter party" with King, Ltd., owners of the tug Maizie C, whereby the latter was to undertake salvage of the stranded vessel. The tug, crew and equipment were hired at the rate of $15 per hour with the provision that operations were to terminate when charges aggregated $1500 unless appellant should authorize a continuation of operations at that time.

Pursuant to that agreement the master of the Maizie C, with the aid of appellant's agent, succeeded in getting the vessel off the rocks, but when it reached deep water the vessel capsized. It was towed in its capsized position toward Honolulu, some 40 to 45 miles, its progress considerably hampered by the manner in which the vessel lay in the water. The towed vessel was still off the island of Maui when the $1500 authorized was exhausted. King, Ltd., notified appellant of the situation and received a statement from appellant that it had no further instructions beyond the terms of the charter. Capt. Hagood testified: "From there on I didn't know who was going to pay me. So I was anxious to terminate the job as soon as possible so as to cut down my own expenses and get back because I had no assurance of being paid by anybody, either Cadiente or the insurance company. However, acting in the interests of whoever was the owner of the vessel—I wasn't sure who was the owner of the wreck—but acting in the interests of the owner I continued to tow it to what I considered to be the nearest safe port, because in my mind the vessel still had some value." Accordingly, the master of the Maizie C took the vessel into the harbor at Kaunakakai, Molokai, where it was moored to the wharf on the morning of June 14. By letter of that date, appellee's attorney made demand upon appellant for payment of the amount of the policy, $10,500, stating that the vessel was a total loss, and that it had been abandoned by the insured. In response, the attorneys for appellant denied liability under the policy and stated: "It is clear to us that this loss is not a constructive total loss. For your information the vessel in question is tied up, keel down, in a righted position,[1] at the Kaunakakai pier, and its owner is still your client. Our client will not assume responsibility for the disposition of said craft."

In the suit which followed, appellee had judgment for $10,500, the amount of the policy, and costs.

The insurance under the policy covered solely "Against the risk of total and/or constructive total loss of vessel only arising from perils insured against." With respect to constructive total loss, the policy provided: "No recovery for a Constructive Total Loss shall be had hereunder unless the expense of recovering and repairing the Vessel shall exceed the insured value. In ascertaining whether the vessel is a Constructive Total Loss the insured value shall be taken as the repaired value, and nothing in respect of the damaged or break-up value of the Vessel or wreck shall be taken into account. * * * Notwithstanding anything herein contained to the contrary, it is mutually understood and

1. The righting of the vessel at this pier had been done at the expense of appellant.

agreed that in ascertaining whether the vessel is a Constructive Total Loss, $21,-000.00 shall be taken as the repaired value and nothing in respect of the damaged or breakup value of the vessel or wreck shall be taken into account."

Appellee made no attempt to prove the cost of recovering and repairing the vessel. This she admits in her brief. She asserts, however, that she is entitled to recover for a constructive total loss because, after she had undertaken to abandon the vessel, the insurer waived any defect in that abandonment for the reason that it "abandoned the carcass of the vessel to the high seas or mercy of a third party". She says that this occurred when appellant, upon being informed of the exhaustion of the $1500, replied that it had "no instructions"; hence, that appellant by its own conduct made itself liable for a total loss, for by that conduct it impliedly accepted abandonment of the insured vessel.

Appellee principally relies upon Copelin v. Phoenix Insurance Company, 9 Wall 461, 76 U.S. 461, 19 L.Ed. 739. We may assume, without deciding, that under the doctrine of that case, had Capt. Hagood, when he received word "no instructions", cast off the tow and let the vessel sink to the bottom, the appellant would have been in no position to question appellee's attempted abandonment. The action of the appellant may well have been callous, and its intentions may have been to abandon the vessel to the high seas, or to put the master of The Maizie C in a difficult position. The fact of the matter is, however, that the vessel was not abandoned to the seas nor was it allowed to sink or to float away. She was taken to a safe harbor and there righted. So far as appellee is concerned that it the only circumstance of importance here. The actual result was no different than if the appellant had acted with decent regard for Hagood's predicament and had offered to pay the additional expense of what he was obliged to undertake voluntarily.

We are not authorized here to punish the appellant for its bad intentions. The basic fact is that the loss of the vessel was not accomplished.

The decision of the trial court was based upon its holding, found in its opinion, that appellant "had abandoned her at sea", and that this was a "clear and constructive acceptance of libelant's abandonment". In the circumstances of this case, this decision of the court was not a finding of fact but a conclusion of law. We cannot agree that this legal conclusion follows from the facts disclosed.

It is suggested that by undertaking the salvage operations as it did, appellant accepted the tendered abandonment. It is sufficient to say that these acts were authorized by the policy's sue-and-labor clause which recited that no such act "shall be considered as a waiver or acceptance of abandonment". Soelberg v. Western Assur. Co., 9 Cir., 119 F. 23, 35.

"In order to entitle the plaintiffs to recover it is essential for them, by competent proof, to show a loss which comes within the terms of their policy of insurance. They must bring their case within the provisions of the contract for insurance. They are bound by the lawful agreements and stipulations therein contained, and must satisfactorily prove a loss. The burden is, of course, upon them to establish their right to recover." Soelberg v. Western Assur. Co., supra, 119 F. at page 31. Since the appellee failed to do this, and did not prove either constructive total loss or acceptance of abandonment,[2] she has failed to make a case of loss under the policy. What we have said makes it unnecessary to consider appellant's further contention that appellee is barred from recovery for breach of condition of the policy requiring her to labor for the defense, safeguard and recovery of the vessel.

The judgment is reversed and remanded with directions to enter decree for appellant.

2. Appellant contends that since the allegations of the libel are solely that the vessel became a constructive total loss, that appellee's attempt to recover upon the theory of an implied acceptance of abandonment cannot be sustained under the pleadings. We have considered it unnecessary to pass upon this question.